Alexander W. Kramer, J.
Action by plaintiff to recover the sum of $910, predicated upon two causes of action:
1. For repairs for parts negligently supplied by the defendant.
2. For breach of warranty for parts supplied by the defendant, which were not fit for the use intended.
Defendant interposed a general denial and a counterclaim for goods sold and delivered in the amount of $439.75, with interest thereon from April 2,1965,
*450 At the inception of the trial plaintiff conceded the validity of defendant’s counterclaim.
FACTS
Plaintiff was the owner of a truck which he had acquired as a used — or secondhand — vehicle in 1964. Said truck was powered by a 1950 Waukesha engine, model 195 GKA.
Defendant is the owner and operator of an auto supply business.
In October, 1964 — plaintiff brought the partially disassembled Waukesha engine to the defendant’s place of business. He spoke with defendant’s employee, William Kleiber, who indicated that he had upwards of 20 years of experience in the business. Plaintiff told Kleiber that he needed various replacement parts in order to enable a mechanic whom he, the plaintiff, had engaged —'One John F. Sabiston — to reassemble the engine and put same back into good, workable condition.
Among the parts which plaintiff indicated needed replacement were the main bearings. At first the model number of the engine was not apparent. Kleiber subjected the material brought to him to a careful and thorough scrutiny. Through the use of a micrometer, trade manuals and Kleiber’s years of experience the engine model was established as a 195 GKA. Kleiber then checked the old main bearings; ascertained the numbers on each and ordered new replacements as per manual.
The disassembled engine was taken by plaintiff to Sabiston’s shop. Thereafter Sabiston received the replacement parts from the defendant. Service and parts manuals put out by the Waukesha Motor Company were made available to Sabiston. Sabiston reassembled the engine.
When the reassembly operation was completed, Sabiston then drove plaintiff’s vehicle from his shop to a paint shop for some additional work. While enroute, the engine “ seized up ” — so Sabiston testified. After attempting to check the cause for the “ seizing up,” Sabiston drove on to the paint shop. Thereafter the vehicle was used by the plaintiff. Additional complaints developed. Sabiston at this point decided to employ a technique described as grooving the main bearings in an effort to alleviate what Sabiston described as a lubrication starvation. The main bearings were grooved: thenceforth the engine performed properly with the result that the vehicle has since been in use by and available to the plaintiff. Sabiston indicated that the lubrication starvation had occasioned some damage to the block; that in order to correct same the block should be replaced. He estimated the cost of repairs between $895 and $1,000. He also *451 indicated that a 1950 Waukesha engine, model 195 GKA, if available, could be purchased for approximately $650.
The plaintiff in his testimony indicated that the vehicle, when purchased by him was used; that the engine had been rebuilt between the date of its manufacture by Waukesha and the date of its acquisition by the plaintiff.
Sabiston had further testified that Waukesha engines of the type in question had two kinds of lubricating systems — one described as a full pressure system and the other as a jet system. The full pressure system required main bearings with grooved walls. The jet system could be operated with main bearings having smooth walls, i.e., absent the grooves.
The engine as brought to defendant’s place of business was serviced by the full pressure system — a fact which was not apparent, but rather of a latent nature.
ISSUES
I. May plaintiff prevail on the theory of defendant’s negligence ?>
There was nothing in the testimony which would support this cause of action.
The elements of negligence encompass some sort of duty, breached by the defendant, whence liability might flow. The duty is one measured by what a reasonably prudent person would have done under the circumstances.
“ Generally speaking, negligence is the failure to employ reasonable care — the care which the law’s reasonably prudent man would use under the circumstances of a particular case; it is the failure to exercise the care required by law. Otherwise stated, negligence is an unintentional breach of a legal duty causing damage reasonably foreseeable, without which breach the damage would not have occurred.” (41 N. Y. Jur., Negligence, p. 6.)
What duty did the defendant breach? Kleiber exerted painstaking efforts in trying to establish what parts were required by the plaintiff. He used a micrometer; manuals; trade magazines — all coupled and tied in with his years of experience. He then determined the numbers on the old bearings and ordered new ones as per catalogue.
'Should he have known that the engine was a full pressure system rather than a jet system? We think not. He was guided by the numbers on the old parts. The replacement parts were for a jet system. Sabiston was able to adapt the new bearings to the full pressure system by grooving the bearing walls. The *452 engine was an old one; it had been rebuilt. The inescapable conclusion is that, in the rebuilding, the jet system of lubrication was replaced by a full pressure system; that the old bearings must have been adapted to the change. This was a latent rather than a patent condition. In our opinion Kleiber was fully justified in relying upon the numbers he found on the old bearings.
The Waukesha Service Manual — apparently published in 1958 — at page 41 thereof contains the following:
“Lubricating Oil Passages
“ When rebuilding Waukesha engines of the Model 195 series, it is very important to use the correct bearings for the engine specification involved. All crankcases are drilled for two different lubrication systems, however, only one system is used in any given engine and it is apparent that the oil holes intended for a semi-pressure lubrication system will not match the oil holes in bearing inserts intended for full pressure lubrication, or reverse. The following information pertains to engines intended to operate on full-pressure lubrication to the connecting rods. Engines of other specifications intended for semi-pressure lubrication may be easily identified by the presence of an oil hole in the flanks of the lower ends of the connecting rods. These holes admit oil directed to them from six drilled jets in the lower •side of the crankcase lower deck above the rods. The jet holes are fed from a drilled passage running lengthwise of the crankcase. Full pressure engines do not use these jet holes and the drilled passage does not contain oil under pressure during operation.
“ The accompanying illustration of the full pressure system shows the main oil header. A, coming from the oil pump and pressure relief valve. From here, oil enters the front main bearing at B, filling the circular groove all around the bearing. Early engines used bearings with no groove in the lower half, but recent engines and service bearings have full circumferential grooving. Oil is introduced to all four main bearings in this manner.” (Emphasis supplied.)
The engine in question was a 1950 model. We feel that Kleiber acted as a reasonably prudent man in assuming that the bearings he had ordered would perform properly. Particularly is this so when we consider the age of the engine; that it was an “ early engine.”
II. May plaintiff prevail upon the theory of the breach of an implied warranty of fitness for use?
Plaintiff cites section 2-315 of the Uniform Commercial Code in support of his position. Said section provides: “ Where the seller at the time of contracting has reason to know any par *453 ticular purpose for which the goods are required and that the buyer is relying on the seller’s skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.”
Plaintiff has directed the court’s attention to many classic cases involving this type of warranty: exploding bottles of soda pop; coal which was not fit for stove size; etc.
Plaintiff has also cited Delo Auto Supply v. Tobin (198 Misc. 601). In that case the trier of the facts observed (p. 602): ‘ ‘ From the evidence I find the facts to be as follows: Plaintiff is a large distributor of parts and equipment for automobiles and trucks. Defendant is engaged in the trucking business and operates a number of Mack trucks. The clutch disc lining having worn out in one of these trucks, defendant dismantled the truck, sent the clutch assembly to the plaintiff for a new disc lining, with full information as to the make, model and type of truck, and left the clutch assembly with the plaintiff two or three days while plaintiff’s employee put in a new disc lining. Defendant then installed this mechanism and reassembled the truck in a proper manner, but the truck could not be operated because the new disc lining was too thin. Plaintiff was at once informed of the difficulty but refused to furnish a thicker or different disc lining because the one supplied was in accordance with catalogue specifications in a standard catalogue widely used by auto parts distributors. So defendant again dismantled the truck and sent the clutch assembly to another dealer, who installed a thicker disc lining which worked properly.”
These facts are distinguishable from the facts in the case now before this court. In this case the defendant, after the exercise of due care, ordered main bearings by number as per catalogue. There is no question about the fact that such bearings would have functioned properly in conjunction with a jet system of lubrication. The age of the engine, the parts numbers, all pointed in the one direction. What defendant did not know was the fact that the lubricating system had been changed — necessitating grooved bearings and that the original bearings must have been adapted to the change — a condition which, as we have indicated before, was latent rather than patent. In order for the plaintiff to be able to charge defendant with breach of the implied warranty, it was incumbent upon the plaintiff to have brought home to the defendant knowledge of the change in lubricating systems.
*454 There is nothing in this case which indicates that the defendant had reason to know that the bearings ordered could not be used for plaintiff’s particular purpose. Plaintiff’s particular purpose was bearings which would work in a full pressure system. That fact, to repeat, was never brought home to the defendant. Defendant acted in complete good faith — relying upon experience, parts numbers, catalogues and manuals — all of which pointed to the fact that the engine in question was serviced by a jet lubrication system. The parts ordered would have fulfilled that need.
The facts in the Délo case may be distinguished. There the plaintiff ordered the lining in accordance with its conclusions based on a perusal of trade literature. It had available to it all data pertaining to the vehicle from whence the clutch assembly had been taken: the make, model and type of truck. The lining which it installed was obviously improper; it did not work. The court was unable to find negligence in what the plaintiff had done. By the same token the defendant had not received quid pro quo. The plaintiff did have available the make, model and type of truck. It should have been able to furnish the defendant with the proper clutch lining. It did not — and consequently the court found liability upon the theory of a breach of warranty.
In the case now before this court the defendant had good reason to believe that the lubrication system of the engine was a jet system. The age of the engine, the number on the old part both pointed to that conclusion. As we have hereinbefore noted more than once, the defendant did not know that the lubricating system had been changed and the old bearing adapted to the change. Absent such knowledge, liability for breach of warranty cannot attach.
Therefore, judgment is directed in favor of the defendant with respect to the causes of action set forth in plaintiff’s complaint and the same shall be dismissed. Judgment should be entered in favor of the defendant on his counterclaim in the sum of $439.75, together with interest from April 2, 1965, together with costs.